No. ——

First Circuit Appeal

DUDLEY L. GUILBEAU v. MARGET BROTHERS COMPANY

(December 30, 1924, Opinion and Decree)
(February 18, 1925, Rehearing Refused)

(*Syllabus by the Editor.*)

1. **Louisiana Digest—Attorneys—Par. 63.**
When an attorney-at-law is consulted about a claim, and subsequently the claim, represented by a mortgage note in which the mortgagor has agreed to pay the fees of the attorney, if the "note" is sued upon, or placed in the hands of an attorney or collector for collection, is brought to the attorney for either the purpose of bringing suit upon or collecting the note and nothing is said by claimant to the attorney in regard to his fee, the agreement is necessarily implied that the attorney will be paid the fee stipulated in the note.

2. **Louisiana Digest—Estoppel—Par. 26.**
Where attorney obtained judgment on a promissory note containing a clause granting 10% for attorney's fees, and sends a bill to his client for $25.00, he is not thereby estopped from obtaining his 10% if the note is collected, because defendant is not misled or has not lost anything by paying the $25.00 bill.

Appeal from the Parish of St. Landry. Hon. B. H. Pavy, Judge.

This is a suit for attorney's fee for suit and collection of a note. There was judgment for plaintiff and defendant appealed.

Judgment affirmed.

G. L. Dupre, of Opelousas, attorney for plaintiff and appellee.

Dubuisson, Perrault & Burleigh, of Opelousas, attorneys for defendant and appellant.

LECHE, J. The case is so well stated and the reasons for judgment so convincing, as written by the judge ad hoc who presided over the trial in the District Court, that we here insert them, viz.:

Plaintiff, an attorney-at-law, brings this suit to recover from defendants the sum of seven hundred and thirty-nine dollars and thirty-nine cents alleged to be due him as attorney's fees under a judgment obtained by him against one Armand L. Dejean, a resident of the city of Opelousas.

The undisputed facts are that defendants were the holders of a certain mortgage note of Dejean's, and that they were trying to collect the same; that Dejean was temporarily without funds and that the property upon which the mortgage rested was also burdened with a mortgage higher in rank than the one held by defendants, and in such amount as rendered the second mortgage practically valueless.

Defendant's representatives called on plaintiff, who had several months previous advised them as to the status of defendant

company's claim, and told him that they wished to close up the Dejean matter. Dejean was engaged in the cotton-buying business in this territory. Plaintiff suggested, to them that if they released their practically valueless mortgage and granted a stay of execution of the judgment. to be obtained on the note to some date in the approaching cotton-buying season, Dejean might confess judgment. This suggestion appealed to them. They left plaintiff's office to see Dejean and returned a short while thereafter and instructed plaintiff to proceed with a suit on the lines suggested by him. Plaintiff brought the suit, record of which forms part of his petition and is in evidence here.

The petition in the suit against Dejean as well as the confession of judgment and the judgment itself were read to defendant company's representatives. One of them, Mr. Durio, signed as a witness to the confession of judgment. The stipulation of the note providing for 10% attorney's fees on principal and interest unpaid if sued upon or placed in the hands of an attorney or collector for collection was embodied in the petition, the confession and in the judgment. The stay of execution was fixed at November 15, 1923.

Nothing was said about the attorney's fees. Plaintiff rendered a preliminary bill for twenty-five dollars, which was paid. A few days before November 15, 1923, plaintiff called on defendant company's local representative, Mr. Durio, and suggested to him as the stay of execution was about to expire that he was ready to take any steps as might be necessary to collect the judgment against Dejean. He was informed that the same had been collected, and upon requesting the payment of the attorney's fees was advised that none were due him. He rendered a bill covering the attorney's fees, less a credit

of twenty-five and 00-100 dollars, which defendant company refused to pay.

Defendant's first defense is that plaintiff is without any cause or right of action for the reason that there is no allegation in the petition to the effect that defendants had either expressly or impliedly promised to pay him the sum of 10% of the amount to be collected as attorney's fees.

This proposition is untenable. The terms of plaintiff's employment were fully set in the petition by reference to the suit on the note against Dejean, which was made part of plaintiff's petition and offered in evidence in the case, and which said suit contained a prayer for attorney's fees, provision for which was also made in the judgment, the note and the confession, all to the knowledge of defendants.

Defendant's defense of the merits is that plaintiff has been paid the sum of twenty-five dollars and that he is entitled to no more and that defendants and Dejean had made an agreement that he was not to pay the entire amount of attorney's fees stipulated.

It is inconceivable that plaintiff, whose reputation as a lawyer and a citizen is without blemish, would have undertaken the collection of the note aforesaid for the mere pittance of twenty-five dollars; his bill for this amount was simply in the nature of a retainer in case the judgment was never paid. It is customary for attorneys to make such nominal charges upon obtaining judgments, but it would be an insult to the profession to hold that such a nominal charge precludes an attorney from recovering his fee in case the judgment was paid. If the judgment had never been paid then plaintiff would have never attempted to hold defendants, as he knew that his fee was contingent; that it depended on the collection of the judgment; and defendants knew or should have known

that when the judgment was collected plaintiff, ipso facto, became entitled to the attorney's fees.

Whatever agreement defendants made with Dejean as to the fee to be paid the attorney can have no bearing on the case for the simple reason that Guilbeau was not a party to such an agreement and knew nothing at all about it. Safford vs. Carrol, 23 An. 28. One of defendant's witnesses, Mr. Durio, testified that Guilbeau had told Mr. McConnel, also a representative of defendant company, that his fee would be "reasonable and moderate," but in this Durio is not corroborated by McConnel, who, on the contrary, positively testified that nothing at all was said about attorney's fees; and this is conclusively shown by the rest of the testimony, and the court thinks that plaintiff is clearly entitled to the amount claimed by him less the sum of twenty-five dollars paid as aforesaid.

For these reasons and because the law and the evidence are in favor thereof, it is ordered, adjudged and decreed that there be judgment herein in favor of Dudley L. Guilbeau and against the defendant Marget Brothers Company, in the full sum of seven hundred and thirty-nine dollars and thirty-nine cents ($739.39), with legal interest thereon from judicial demand until paid, less the sum of twenty-five dollars heretofore paid by defendant company. And it is further ordered, adjudged and decreed that defendant company be and it is hereby condemned to pay all costs of this suit.

Judgment rendered, read and signed in open court this 19th day of June, 1924.

When an attorney-at-law is consulted about a claim, and subsequently the claim, represented by a mortgage note in which the mortgagor has agreed to pay the fees of the attorney, if the note "is sued upon, or placed in the hands of an attorney or collector for collection," is brought to the attorney for either the purpose of bringing suit upon or collecting the note, and nothing is said by the claimant to the attorney in regard to his fee, the agreement is necessarily implied that the attorney will be paid the fee stipulated in the note. It is unusual and unnecessary that there should be a distinct and expressed agreement that the attorney should receive as his honorarium the fee which the mortgagor has obligated himself to pay to the holder of the note. Indeed the converse of the proposition is equally true that whenever the holder of a note wishes to vary or change the terms of the stipulation by paying less, or the attorney will not consent to accept the stipulation as written because the amount is insufficient, it is absolutely necessary that a special and express agreement be entered into by the parties. So that when defendant brought the note to plaintiff and made no mention of attorney's fees, plaintiff was fully justified in assuming that he was employed at the compensation fixed in the note. Such a condition on entering into the contract of employment is so evidently implied that to have expressly mentioned it would have been mere surplusage. The surrounding circumstances speak louder than words.

We do not believe there can be any doubt that as soon as plaintiff had sued Dejean and obtained a judgment in favor of the present defendant, he had earned and was entitled to recover from defendant the honorarium stipulated in the note. Dejean owed nothing to the present plaintiff and we fully agree with defendant's counsel that plaintiff had no direct monetary interest in the judgment which he obtained against Dejean. The stipulation for attorney's fees is in favor of defendant and, in the contract of employment, it

merely served as the basis fixing the amount of the fee which plaintiff was to recover from defendant and which defendant was to recover from Dejean as stipulated damages.

The defense that plaintiff cannot recover because he presented a bill to defendant immediately after obtaining judgment and collected twenty-five dollars for professional services in the suit against Dejean seems to be based upon equitable estoppel. But there is nothing to show that defendant had been misled, its position made worse or has lost anything by the payment of that bill. Plaintiff explains in his testimony that he charged this amount as a minimum fee in case defendant was unable to collect its judgment, or, in other words, that he was willing to lose the balance of the fee if defendant was unsuccessful in recovering its claim against Dejean.

There is nothing immoral, wrong or reprehensible in this act of plaintiff.

We believe the judgment appealed from should be affirmed and it is so ordered.