### FOUNDATION FINANCE CO., Inc., v. ROBBINS et al.*

#### No. 14073.

Court of Appeal of Louisiana. Orleans.

Nov. 14, 1932.

*Rehearing denied December 19, 1932.

294

See, also, 142 So. 363.

Benjamin Y. Wolf, of New Orleans, for appellant.

Guy J. D'Antonio, of New Orleans, for appellee.

JANVIER, J.

Plaintiff company is engaged in the money lending business, being licensed under the so-called "Small Loan Act," No. 7 of the Extra Session of 1928.

It seeks recovery of certain money borrowed by Sam Robbins, one of the defendants. The other defendants are alleged to have indorsed the note.

Judgment was rendered in the court below against two of the defendants, Rosenberg and Lenemyer, and only Rosenberg has appealed.

He contends that the judgment should be reversed and the suit dismissed for various reasons set forth in his answer and other pleadings.

In his brief and in oral argument before us counsel for Rosenberg suggests, although the point is not made in the pleadings, that we should dismiss the suit for want of jurisdiction in the court below ratione materiæ. He contends that the amount involved is in excess of the maximum sum of which the first city court of New Orleans is given jurisdiction under section 91, article 7, of the Constitution of 1921, as amended by Act No. 197 of 1928.

■■ If there is a want of jurisdiction ratione materiæ, the court below was without power to pass upon the other questions involved, and we, therefore, consider it proper to first investigate the contention of the defendant on this point.

That a court may, and, in fact, must, even in the absence of pleading, consider whether there is jurisdiction, is well settled.

"We are forced to notice this want of jurisdiction ex officio." Pawnee Land & Lumber Co. v. Guillory, 144 La. 597, 80 Só. 890.

In a syllabus written by the court in State, ex rel. Charles Fourroux v. Board of Directors, etc., 3 La. App. 2, we said: "A court must notice ex officio its want of jurisdiction ratione materiæ; a judgment rendered in such a case is null."

In Heard v. Monroe Sand & Gravel Co., Inc., 6 La. App. 362, the court said: " * * * The parties have not raised the question as to our jurisdiction, * * * it appears to us that this court is without jurisdiction ratione materiæ, and it is our duty to take notice of want of jurisdiction. (State v. Judge, 45 La. Ann. 1206, 14 So. 73)"

"Consent of parties cannot give jurisdiction, when wanting ratione materiæ." 2 Louisiana Digest, p. 425, Courts, § 12.

This rule, as appears from the quotation last above given, results from the fact that jurisdiction ratione materiæ cannot be created by consent of the parties. Code Prac. art. 92. The rule would be of no effect if want of jurisdiction could not be noticed by a court ex proprio motu.

The amount of the claim is $240 in principal, together with interest, and, also, attorney's fees, which are fixed in the note at 25 per cent. of the total amount of principal and interest. There is some interest due. If interest, no matter how little, be added to the principal, and attorney's fees at 25 per cent. of the whole be then computed and added to the principal sum of $240, the claim will exceed $300, which is the maximum jurisdictional limit of the first city court. In Rogge v. Close, 134 La. 527, 64 So. 400, the question of jurisdiction was raised. There it was contended that the amount in dispute was below the minimum jurisdictional limit of the Supreme Court. The principal amount due was $1,800. The court found that the amount of interest was less than $200, and that, therefore, the attorney's fees fixed at 10 per cent. of the total amount of principal and interest was less than $200, and that, adding the attorney's fee of less than $200 to the $1,800 principal sum due, would produce a maximum amount due of less than $2,000, and that, therefore, the Supreme Court did not have jurisdiction. If we adopt the same method of figuring, it will appear in this case that the amount in dispute is in excess of $300.

■■ It is well settled in this state, as well as almost universally elsewhere, that, where there is a contractual obligation to pay attorney's fees, the right to claim those fees, in the event of the happening of the contingency upon which they are made to depend, belongs to the person in whose favor the main obligation

runs and not to his attorney, and that, thus, fees actually become a part of the claim, and, in the absence of statute, are to be taken into account in determining jurisdiction.

In Succession of Foster, 51 La. Ann. 1670, 26 So. 568 (a much cited case), our Supreme Court, in a syllabus, said: "The fee of the attorney of the mortgage creditor, fixed in the act of mortgage on the amount of the debt, forms part of the demand. It is part of the amount claimed, and inseparable from it in matter of jurisdiction."

A reading of the decision of Rogge v. Close, supra, shows plainly that the court there took into consideration the attorney's fee in determining whether there was jurisdiction.

In Springstead v. Crawfordsville State Bank, 231 U. S. 541, 34 S. Ct. 195, 58 L. Ed. 354, the Supreme Court of the United States decided squarely that: "In determining the amount in controversy for jurisdictional purposes the attorney's fee provided for in a promissory note in case of suit can be considered, as it is not a part of the costs."

In Ruling Case Law, vol. 7, p. 1054, is found: "Many notes and other instruments for the payment of money contain the provision that, if they are not paid when due, the payee when suing thereon shall be entitled to an attorney fee fixed therein either as a lump sum, or as a certain percentage of the principal sum, or, generally, as a reasonable sum. By the great weight of authority, the amount of such attorney fee should be added to the principal sum due to determine whether the amount in controversy is within or without the jurisdiction of the court."

In Corpus Juris, vol. 15, p. 766, it is said that: "Where attorney's fees are claimed as part of the damages recoverable, such fees are properly considered in making up the jurisdictional amount."

We, therefore, reach the conclusion not only that we must, ex proprio motu, consider the question of jurisdiction, but also that the attorney's fee fixed in the note should be taken into consideration in determining whether there is jurisdiction.

But we now note and find it necessary to devote much thought to the fact that, in determining whether the first city court of New Orleans has jurisdiction in matters involving moneyed demands, there shall not be taken into consideration "interest and penalties" (article 7, § 91, Constitution of 1921, as amended by Act No. 197 of 1928), and we find most interesting the argument of counsel for plaintiff that an attorney's fee, which is made contingent upon the failure of the obligor to comply with his obligation, is a penalty, and, therefore, should not be taken into consideration in determining whether or not that court had jurisdiction. We have, however, reached

the conclusion that, where an agreement contains a stipulation for the payment of attorney's fees, those fees are to be considered as representing a part of the damage which noncompliance by the obligor will inflict upon the obligee and not as a penalty upon the obligor. The main consideration which leads to the inclusion of the said stipulation is not the hope that the requirement of the payment of the fees will enforce the payment of the main obligation, but is, rather, a desire on the part of the obligee, or lender, that, if he must employ an attorney, he will not be required, out of his own pocket, to pay for such service. Thus, the moving consideration for the inclusion of the said stipulation is not punishment of the obligor for his failure to comply with his agreement, but, rather, repayment to the obligee of any loss he may sustain. Our Civil Code, in article 2117, defines a penal clause as "a secondary obligation, entered into for the purpose of enforcing the performance of a primary obligation." As we have stated, we do not believe that the inclusion of the stipulation for attorney's fees is entered into for the purpose of enforcing the performance of the primary obligation, but that it is, rather, a stipulation made in advance to compensate the lender for expenses to which he may be put in the event of noncompliance with the primary obligation. It should, thus, be considered rather as liquidated damage than as a penalty. The word "penalty" contemplates punishment. It is usually provided by law or by agreement in the hope that the fear of its imposition will result in bringing about the fulfillment of the main obligation.

We find that in several cases attorney's fees stipulated for and made contingent upon noncompliance are termed "liquidated damages." In First National Bank v. Mayer et al., 129 La. 981, 57 So. 308, the court, in referring to such attorney's fees, used the words "liquidated damages" as properly applicable thereto.

In Guilbeau v. Marget Bros. Co., 1 La. App. 357, the court said: "The stipulation for attorney's fees is in favor of defendant and, in the contract of employment, it merely served as the basis fixing the amount of the fee which plaintiff was to recover from defendant and which defendant was to recover from Dejean as stipulated damages."

As "stipulated" or "liquidated" damages, the attorney's fees here involved became part of the claim, under the various decisions above cited, and are not to be considered as penalties within the contemplation of Act No. 7 of the Extra Session of 1928.

Since they are not penalties they should be taken into consideration in determining jurisdiction ratione materiae, and, if taken into consideration, will result in increasing the amount in dispute beyond the maximum sum of which the first city court is given jurisdiction. As that court was without jurisdiction,

the suit must be dismissed and we cannot consider the other defenses.

The judgment appealed from, in so far as it condemns Rosenberg, is annulled, avoided, and reversed, and plaintiff's suit as against Rosenberg is dismissed as in case of nonsuit.

Judgment reversed.