Abbaham N. Geller, J.
Defendant, charged wth the crime of murder in the first degree, moves for permission to inspect pretrial the Medical Examiner’s autopsy report on the deceased, and the police (Bureau of Criminal Identification) record of the deceased, as well as certain written statements made by defendant to law enforcement authorities.
The alleged homicide occurred 10 years ago in July, 1950. Defendant was taken into custody 9 years thereafter, in July, 1959, when he made two separate statements, one prepared by the authorities and signed by him, the other being oral and transcribed by a stenographer. Although the statements are claimed to be exculpatory, rather than incriminatory, it seems clear from the papers and oral argument that they may be admissible as partial admissions and that the People intend to offer them at the trial.
Considering first the request for the statements, it should be noted that we are not dealing here with the question of their availability to defendant at the trial. We are concerned solely with their availability prior to trial. The questions to be decided are whether the court has power to order pretrial disclosure of such statements and, if so, whether sufficient grounds appear to warrant such disclosure.
At early common law, the courts were deemed powerless to compel disclosure of items of prosecution evidence to the accused. (6 Wigmore, Evidence [3d ed., 1940], §§ 1845, 1859.) As late as 1927, the New York Court of Appeals in the leading case of People ex rel. Lemon v. Supreme Ct. (245 N. Y. 24) held that the trial court had no power to order disclosure of notes and memoranda which were not admissible in evidence and left open the question whether it could be ordered even where the items were admissible. Today, however, despite some views to the contrary, it seems to be generally agreed that a court has the discretionary power to direct discovery of items in possession of the prosecution which are admissible in evidence. (Matter of Silver v. Sobel, 7 A D 2d 728; People v. D’Andrea, *757 20 Misc 2d 1070; People v. Higgins, 21 Misc 2d 94; People v. Wilson, 17 Misc 2d 349; People v. Grassgreen, N. Y. L. J., July 27, 1960, p. 7, col. 7 [Westchester County]; Comment, Pre-Trial Discovery in Criminal Cases, 60 Yale L. J. 626. See, also, Walker v. Superior Court, 155 Cal. App. 2d 134, and State ex rel. Sadler v. Lackey, 319 P. 2d 610 [Okla. Crim.], where discovery was ordered as to items not ordinarily admissible in evidence.) And an increasing number of courts are exercising this discretionary power by directing discovery of written confessions or admissions. (People v. Rogas, 158 Misc. 567; People v. D’Andrea, supra; State v. Haas, 188 Md. 63; State v. Johnson, 28 N. J. 133; People v. Johnson, 356 Mich. 619; State v. Thompson, 54 Wn. 2d 100; Powell v. Superior Ct., 48 Cal. 2d 704; State ex rel. Polley v. Superior Ct., 81 Ariz. 127; Kaufman, Criminal Discovery and Inspection of Defendant’s Own Statements in the Federal Courts, 57 Col. L. Rev. 1113; Grady, Discovery in Criminal Cases, Univ. 111. Law F., Fall, 1959, pp. 827-843.)
Indeed, the District Attorney, apparently acknowledging the trend toward liberal discovery rules with respect to written confessions and admissions, bases his opposition not so much on a lack of power in the court to make the statements available to defendant but on the insufficiency of defendant’s showing in support of such relief. He argues that making a defendant’s statement available to him in advance of trial would give him him the opportunity to fabricate appropriate defenses or perjuriously explain away damaging admissions or inconsistencies and that the courts should, therefore, proceed cautiously in this relatively unchartered area and require a most compelling showing before granting inspection of confessions until the feared danger of increased perjury can be more realistically appraised in the light of practical experience. The District Attorney then concludes that the basis set forth for the requested relief is not compelling in that there is no claim by defendant himself that he has actually forgotten the details of his statements to the authorities, and that there is no showing that factual investigation would be significantly facilitated by inspection of the statements in advance of trial.
The fear that discovery, particularly in criminal cases, results in fabrication of evidence and perjury is an old one. ‘ ‘ Perjury is one of the great bugaboos of the law. Every change in procedure by which disclosure of the truth has been made easier has raised the spectre of perjury to frighten the profession.” (Sunderland, Scope and Method of Discovery Before Trial, 42 Yale L. J. 863, 867.) The validity of this fear has been *758 thoroughly debated and analyzed in the cases and by commentators. (See, e.g., State v. Johnson, 28 N. J. 133, supra; State v. Tune, 13 N. J. 203; People v. D’Andrea, 20 Misc 2d 1070, supra; Fletcher, Pretrial Discovery in State Criminal Cases, 12 Stanford L. Rev. 293.) It is therefore sufficient at this time to state that this court shares the views expressed in the convincing and well-considered opinions of Sobel, J., in People v. D’Andrea (supra) and of Weiutbaub, C. J., in State v. Johnson (supra) that the fear of perjury resulting from pretrial discovery of written confessions is exaggerated and unsubstantiated.
Concededly, such liberalization of discovery in criminal cases may result in some perjury in specific instances. But surely it is neither rational nor just to base upon this assumption alone a general practice of denying all defendants the opportunity to examine their written statements in advance of trial. “ The true safeguard against perjury is not to refuse to permit any inquiry at all, for that will eliminate the true as well as the false, but the inquiry should be so conducted as to separate and distinguish the one from the other, where both are present.” (Sunderland, op. cit., supra, p. 868.) And Professor Wigmore said as follows: “The possibility that a dishonest accused will misuse such an opportunity is no reason for committing the injustice of refusing the honest accused a fair means of clearing himself.” (6 Wigmore, Evidence, § 1863, p. 488.) Hence, the more rational and just practice would be one where the court grants or denies discovery of such statements on the basis of the facts in each case after evaluating the possibility and extent of perjury and balancing it against other considerations related to the ultimate purpose of a criminal trial.
The purpose of a criminal trial is to determine the true facts from among those in issue. Our system of justice is based on the assumption that the adversary proceeding, wherein the parties are responsible for developing the facts for the trier of fact, is best suited to ascertaining the truth. And pretrial discovery and inspection generally foster a more thorough development of the facts at the trial by reducing the elements of concealment and surprise which typified common-law trials (6 Wigmore, Evidence, § 1845, subd. A, p. 372 et seq.) and which are still too prominent in today’s criminal fact-finding process. (See Orfield, Criminal Procedure from Arrest to Appeal [1947], pp. 321-323.) Earlier this year the First Department reminded us in Matter of Roland (Deak) (10 A D 2d 263, 265) of “ the policy of this Department to extend the effectiveness of disclosure proceedings It is, therefore, an anomaly that in *759 criminal actions, where defendants are subject to loss of liberty or life, discovery procedures lag far behind those in Civil actions.
Also to be Considered in the conduct of á Criminal trial are the “ fundamental requirements of fairness ” (Roviaro v. United States, 353 U. S. 53, 60) to which a defendant is entitled. Included ámoñg thesé requirements iS the right of ñ déféndañt to preparé his défensé (Roviaro v. United States, supra). And, in view of thé óftén crucial role of a Confession in a criminal trial, an opportunity fdr defendant to examine it pretrial may bé necessary for him to adequately preparé for trial As the Court pointed out in State v. Johnson (28 N. J. 133, 137, supra) : “ Wé must bé mindful óf the role of a conféssióU. It frequently béCOiñés thé Core óf the State’s case. It is Uót Uncommon for the judicial proceeding tó bécome more of a réviéw óf what transpired at headquarters than a trial of thé basic criminal event itself. No one would deny a defendant’s right thoroughly to investigate the facts of the crime to prepare for trial of that event. When a confession is given and issues surrounding it tend to displace thé criminal event as the foCus of thé trial, theré shóüld be like opportunity to get at the facts of the substituted isStie. Simple justice requires that a defendant be permitted to prepáré to meet what thus looms as the critical element of thé CáSé against him. ’i it should also be borne in mind that a confession is Ordinarily obtained in á tension-filled atmosphere ahd in a Setting Structured by thé authorities. Hence, although the defendant may in fact have been at the scene of the criminal event or otherwise involved in it, his written statement may not always reflect accurately thé extent of his involvement or exculpatory facts which may affect the question of hiS guilt or the dégrée of his guilt. Considerations Of such Character lend great weight to' the observation of thé court in State v. Haas (188 Md. 63, 76, supra) that “ there seems to be a measure of élémental justice in permitting one accused of crime to seé a confession alleged to have been made by him, which‘he éxpeets to be produced against him at his trial. ’ ’ The notion that the prosecution has some vested tactical interest in withholding a defendant’s statement, the details of which he may have forgotten, so that it máy be sprung Upon him at the trial is a form of “ trial from ambush ” (State v. Thompson, 54 Wn. 2d 100, 109, supra, [concurring Opinion]) which is inconsistent with modern concepts of accurate fact-finding. (See,- e.g., Arens and Meadow, Psycholinguistics and The Confession Dilemma, 56 Col. L. Rév. 19. Consider also thé practice in England where the défénse can learn all of the Crown’s evidence before the trial. See Whitman, The Administration of the Criminal Law, in 5 New York City *760 Bar Assn. Lectures on Legal Topics 421, 424, cited in 6 Wigmore, Evidence, pp. 394-395.)
As indicated earlier, the People herein express concern with the possible consequences of freely directing discovery of defendants’ statements. However, such concern is unnecessary, for the court does not suggest that a defendant has an absolute right in all cases to inspect his statement pretrial, but that the court has the power to direct such relief in its sound discretion. As the court said in State v. Haas (188 Md. 63, 75-76, supra): “ Whatever merit that argument has as applied to a situation where it is contended that the accused has a right to inspect the evidence, it has no application, we think, to a situation where the trial judge in each case and on each application, determines what should be done in the interest of justice. There are cases in which it would be clearly unjust to deny such an application and, on the other hand, cases are conceivable in which it might improperly hamper the prosecution to grant such an application.”
It is likely, and perhaps inevitable, that the presently evolving practice of liberal discovery in criminal cases may ultimately lead to the automatic granting of discovery of a defendant’s written statement in the absence of a showing of prejudice to the People. (See, e.g., 111. Rev. Stat. ch. 38, § 729 [1957]; Minn. Stat. Ann. § 611.033.*) But such a policy, initiated full-blown by judicial decision without the benefit of adequate experience in granting such relief, would be too sweeping and perhaps an abuse of discretion. The wiser course would be to reach that goal, if at all, after a reasonable accretion of practical experience. “ Just as in civil cases, where there originally was no discovery or inspection and that procedure developed through gradual evolution, there is now slowly being born a tendency to apply that procedure in certain proper cases in the criminal courts.” (Matter of Hughes v. County Court, 181 Misc. 668, 672-673.)
The court, by proceeding upon the basis of the facts in each case, can determine whether directing pretrial disclosure of a defendant’s written statement will further the ends of justice. These ends would be furthered, for instance, where the court finds, on balance, and upon a satisfactory showing by defendant (a) that granting the relief would aid the trier of fact in making a more accurate determination of the facts in issue or (b) *761 that the relief is necessary from fundamental requirements of fairness. In the context of these basic elements of the administration of justice the court in each case can determine more rationally the weight to attribute to possible fabrication and perjury. Where the court finds that directing pretrial disclosure of defendant’s statement would, on balance, obfuscate rather than foster the truth, it can deny the motion entirely or merely withhold portions of the statement, such as where witnesses named therein might be subject to corruption or intimidation. Even though the court finds a danger of perjury, it might nevertheless direct discovery of the statement where it finds that such danger is outweighed by considerations of fairness or that the end result would on balance be a more accurate determination of the facts. It should be remembered that perjury does exist in trials, and that it is precisely the function of the trier of fact to ascertain the truth. Moreover, it is the view of this court on the basis of its experience, particularly in trying the issue of voluntariness of confessions, that any attempt by a defendant perjuriously to impeach his written confession would more likely hurt than help his case.
It is obviously impossible to catalogue all the possible factual situations warranting pretrial disclosure of a defendant’s statement. Those that have been deemed sufficient by other courts upon a proper showing by defendant are (a) where psychiatrists need defendant’s statement to aid their determination of his criminal responsibility, (b) where defendant cannot recall his statement sufficiently for his counsel to prepare adequately for trial and (c) where the voluntariness of the confession is in issue and pretrial investigation of the facts stated therein would aid the determination of that question (People v. Rogas, 158 Misc. 567, supra; People v. D’Andrea, 20 Misc 2d 1070, supra; State v. Johnson, 28 N. J. 133, supra; Matter of Tune, 230 F. 2d 883 [C. A., 3d]).
Turning to the application herein, it appears that the grounds set forth in the affidavit by counsel are that “ the defendant cannot be expected to recall or remember all of the details in connection with [these] statements which [were] taken about eight or nine months ago ”, and that inspection of the statements is necessary to prepare properly for trial. There is no affidavit by defendant himself, showing, with sufficient factual support, that he in fact cannot recall the details of his statements, nor a showing, beyond the bare allegation, as to why they are necessary at this stage of the proceedings in order to prepare properly for trial.
*762 If the court were to grant the motion upon the meager showing herein made, it would in effect be embracing a practice of turning statements over to defendants simply upon request. As has already been indicated, the court is not disposed to go so far at this point in the development of pretrial discovery in criminal cases. A mere assertion by counsel that a defendant cannot recall his statement is not enough. There must be an affidavit by the defendant to that effect with adequate factual support. To establish such claimed inability of recollection a defendant, in addition to giving the facts and circumstances surrounding the taking of his statement, should show the time elapse since the giving of the statement or any other facts which may tend to generally support his contention, such as the length of the statement, his illiteracy or mental incapacity, if any, that the statement was made through an interpreter, that he was subjected to coercion, misrepresentation, deceit, intimidation through fear or otherwise, or that he was not in adequate control of his faculties because, for example, he was under the influence of alcohol or narcotics.
Furthermore, a defendant should establish, as indicated, the respects in which pretrial discovery of the statement is necessary for his preparation for trial. On the basis of such a showing the court will be better able to determine whether directing discovery will further the ends of justice.
The defendant here having failed to make a satisfactory showing, this branch of the motion is accordingly denied, with leave to renew, if the defendant be so advised, upon proper papers.
It is difficult to understand why, in the face of the fact that courts generally, and particularly in this State, have been progressively enlarging procedural rights to assure fair trials, and the fact that courts of many other jurisdictions have enlarged the scope of discovery and inspection of the character here sought, the courts of New York have not forged ahead by liberalizing the procedural rule in question. While, as indicated, I anticipate that the courts of this State will continue to liberalize discovery practice relating to such written statements, the problem can be solved more quickly and directly by the Legislature.
The autopsy report is in a different category, since it is not subject to tampering or to refutation by perjury. (See Comment, Pretrial Disclosure in Criminal Cases, 60 Yale L. J. 626, 643, supra.) Therefore, the court, being satisfied from the facts in this case that that autopsy report may be material in determining the issue of self-defense raised by defendant, *763 directs in the exercise of its discretion that the District Attorney furnish the defendant’s counsel with a transcript thereof (Matter of Silver v. Sobel, 7 A D 2d 728, supra; People v. Munoz, 11AD 2d 79 [1st Dept]; People v. Higgins, 21 Misc 2d 94, supra). Moreover, it would appear that the District Attorney has no serious objection to making the report available to the defendant.
The request for deceased’s police record is denied since no legal basis for such relief has been established. In any event, the question is moot since it appears that there is no such record of the deceased.

 The Illinois statute provides that a written confession shall not be admitted in evidence unless a copy thereof was given to defendant prior to arraignment and with respect to an oral confession, that defendant was given the names and addresses of all those present at the time of the making thereof. The Minnesota statute includes written, but not oral, statements, confessions and admissions.